IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| BRANDON GREENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 123-114 |
| ) | |
| LT. M. CHEATAM; SGT. N. COWART; ) | |
| OFC. GABREIAL; OFC. MORRIS; ) | |
| MAJOR MITCHELL; CAPT. DANKO; ) | |
| CPL. COLEMAN; CPL. CULYER; ) | |
| SGT. T. STERNS; and TOOMER, ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, a pretrial detainee at Charles B. Webster Detention Center ("CBWDC") in Augusta, Georgia, was denied bond in November 2021 and currently awaits trial in the Superior Court of Richmond County in three cases charging drug trafficking, assault, and firearms offenses. See Augusta, Ga. Case Mgmt. Search, cocaugustaga.com (click "Criminal Search," then search case numbers 2021RCCR00839, 2021RCCR01068, and 2021RCCR01069). Plaintiff filed this case pursuant to 42 U.S.C. § 1983 and is proceeding *pro se* and *in forma pauperis* ("IFP"). The Court **DIRECTS** the **CLERK** to update the Defendants in accordance with the caption on this Order, which is consistent with Plaintiff's Amended Complaint. (See doc. no. 8.) Because he is proceeding IFP, Plaintiff's Amended Complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785

(11th Cir. 1984) (*per curiam*); <u>Al-Amin v. Donald</u>, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.  **ALLEGATIONS IN AMENDED COMPLAINT AND OTHER FILINGS**

Plaintiff's Amended Complaint names the following Defendants in their individual and official capacities: (1) Lieutenant M. Cheatam, (2) Sergeant N. Cowart, (3) Officer Gabreial, (4) Officer Morris, (5) Major Mitchell, (6) Captain Danko, (7) Corporal Coleman, (8) Corporal Culyer, (9) Sergeant T. Sterns, and (10) Toomer. (Doc. no. 8, pp. 1-4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 26, 2023, an inmate with the last name Butler robbed and assaulted Plaintiff in the A-C Pod at CBWDC. (<u>Id.</u> at 5.) Mr. Butler, a Crips gang member, rushed into Plaintiff's cell, stabbed him with a shank, and stole items while several Crips members stood outside the cell. (<u>Id.</u> at 5, 7-8.) When Plaintiff asked for help, Officer Gabreial walked away from Plaintiff's cell and did nothing to intervene. (<u>Id.</u> at 8.) After the inmates left, Plaintiff banged on the front door window and told Officer Ellison about the robbery. (<u>Id.</u>) Officer Ellison called for backup but no one responded. (<u>Id.</u>) As a result of the attack, Plaintiff suffered from a stab wound to his head and swelling of his head and face. (<u>Id.</u>) Officers transported Plaintiff to the hospital at an unspecified time after the assault, and Plaintiff received staples for the stab wound to his head. (<u>Id.</u> at 7-8.)

When Plaintiff's family learned of the assault, they made repeated calls to CBWDC out of concern for Plaintiff's safety. (<u>Id.</u> at 8.) Following Plaintiff's return from the hospital for treatment of his stab wound, Defendant Cheatam placed the entire A-C dorm in the recreation yard and told Plaintiff to pack his stuff because he was "tired of [his] family calling up here."

(Id. at 8.) Plaintiff was transferred to the G-C pod even though Plaintiff had been transferred out of the G-C pod after a December 2022 incident where an officer with the last name McKenzie allowed gang members to rob and assault Plaintiff. (Id. at 5, 8.) Plaintiff reported the December 2022 assault and robbery to Captain Johnson and shift supervisors, and he also filed grievances concerning the event. (Id. at 7-8.) The jail did nothing. (Id.)

Plaintiff "knew there was go[ing to] be trouble" upon returning to the G-C pod because several inmates from the December 2022 assault and robbery were still housed there. (Id. at 9.) Plaintiff and his girlfriend informed many jail officers of the danger, including Defendant Morris, but they refused to move him. (Id.) Sure enough, Plaintiff was again beaten and stabbed by inmates in the G-C pod. (Id. at 9-10.) While at the hospital to receive treatment for his injuries in this latest attack, Plaintiff told Deputies Parks and Ellison he was not safe at CBWDC and asked them to call GBI because he "feared for his life every day." (Id. at 10.)

When Plaintiff returned to CBWDC from the hospital and Deputy Parks told Defendant Cowart about Plaintiff's concerns, Cowart responded by placing Plaintiff in strip cell G-S-1, which has no running water, a broken toilet that will not flush, a bad odor, and a bug infestation. (Id. at 5, 9-11.) To make matters worse, Plaintiff's shower privileges were reduced significantly so that he only showers once every week or two. (Id. at 10.) Further, Plaintiff did not receive any follow-up medical care more than one week following his return from the hospital. (Id. at 7.) Plaintiff was only able to have the staples removed from his head after he stopped, and requested assistance from, a nurse who was present in the pod. (Id.)

On August 10, 2023, Defendant Cowart began writing Plaintiff disciplinary reports that resulted in withdrawal of Plaintiff's recreation and phone privileges. (Id.) On August 24, 2023, Defendant Coleman became aware of Plaintiff's case-related mail correspondence with

3

the Court and locked Plaintiff in the shower from 2:00 to 5:00 p.m. to prevent Plaintiff from making phone calls. (Id. at 11.) On August 26, 2023, Defendant Culyer took all of Plaintiff's personal property and moved him to dorm F-A, knowing gang members are housed there and the unit's doors are broken and do not lock. (Id.) The next morning, Plaintiff had to "cut [his] wrist . . . to make it out safe." (Id.)

On August 30, 2023, Defendants Morris and Gabreial distributed frozen meal packets while Plaintiff was asleep and hit Plaintiff in the head with two of the frozen packets. (Id.) The next day, they refused to feed Plaintiff during their shift. (Id.) On September 1 and 2, 2023, Plaintiff notified Lt. Herell, Sgt. Seymore, Defendant Sterns, and Defendant Mitchell of his horrible cell conditions and denial of food. (Id. at 12.) Plaintiff is still currently housed in the strip cell. (Id. at 7, 11.) Defendant Mitchell told Plaintiff that he is "stuck in this cell until [he] leave[s] this jail." (Id. at 11.)

Plaintiff concedes he never filed a grievance but alleges officers refused to provide him with grievance forms when he asked. (Id. at 6, 12-13.) Plaintiff requests monetary relief in the form of punitive damages, as well as reassignment to a different jail or release on bond. (Id. at 7.)

In his motion for appointment of counsel, Plaintiff asserts CBWDC is hindering his ability to litigate this case by housing him in the strip cell, where he has no personal property, no access to legal resources, no mail privileges, no phone privileges, and no visitation privileges. (Doc. no. 10, pp. 1-2.) Plaintiff alleges the commissary sold him envelopes but refused to sell stamps to prevent him from mailing the Court. (Id.) To file documents with the Court, Plaintiff obtained stamps from other inmates. (Id.) Plaintiff also asserts CBWDC staff

4

refuse to sign his Prisoner Trust Fund Account Statement and refuse to provide him drinking water.  (Id.)

In his motion for preliminary injunction, Plaintiff repeats the allegations of his Amended Complaint.  (Doc. no. 11, pp. 1-2.)  He further alleges that, upon his return from the hospital after the assault on June 26, the jail deprived him of drinking water, medical treatment, showers, and contact with his family.  (Id. at 2.)  The only reason officials allowed Plaintiff to shower after a week in the strip cell was because his head was still bloody from the assault and his family members visited CBWDC to check on his welfare.  (Id.)  Plaintiff asserts his August 26th assignment to a "lockup" unit and confiscation of his personal property was in response to Plaintiff receiving legal mail from this Court.  (Id.)  Plaintiff reiterates that the doors are broken and do not lock in F-A.  (Id.)

Plaintiff currently does not have access to the grievance process, running water, contact with family, or a working toilet, and is only allowed to shower approximately once per week.  (Id. at 2-3.)  Plaintiff has to use the bathroom in empty cups and on empty food trays because the "hole in the floor [doesn't] flush."  (Id. at 3.)  Plaintiff has failing kidneys and high blood pressure, which requires medication and frequent use of the restroom.  (Id.)

**II.    DISCUSSION**

**A.    Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

> **B.** **Plaintiff Fails to State a Claim Against Defendants Sheriff - Richmond County Jail, Danko, and Toomer**

Plaintiff's Amended Complaint supersedes and replaces in its entirety the original complaint.  See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).  Further, the Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").

Plaintiff originally named Sheriff - Richmond County Jail as a Defendant.  (See doc. no. 1.)  Plaintiff's amended complaint, however, no longer names Sheriff - Richmond County Jail, and does not mention this Defendant anywhere in his amended complaint.  (See generally doc. no. 8.)  Dismissal of Defendant Sheriff - Richmond County Jail is therefore appropriate.

Moreover, Plaintiff does not make any allegations associating Defendants Danko and Toomer with purported constitutional violations in his Amended Complaint.  (See generally doc. no. 8.)  Plaintiff lists them without any context and does not mention Defendant Toomer anywhere in his statement of the claim.  (Id.)  Defendant Danko, however, is mentioned once in the Amended Complaint, but is merely listed alongside other non-defendants in response to a question on the standard complaint form asking Plaintiff to list any officials who were informed of Plaintiff's claim in lieu of a grievance.  (Id. at 13.)  However, Plaintiff does not explain how Defendant Danko may have violated his rights following such notification.  (See id.)  Dismissal of Defendants Danko and Toomer is therefore appropriate.  See Douglas, 535 F.3d at 1321-22.

7

    **C.**    **Plaintiff's Official Capacity Monetary Claims**

Plaintiff is suing all Defendants in their individual and official capacities. (Doc. no. 8, pp. 2-4.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

**III.**    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** dismissal of all claims against Defendants Sheriff - Richmond County Jail, Danko, and Toomer, as well as all official capacity claims for monetary damages against all Defendants. By separate Order, the Court directs service of process on Defendants Cheatam, Cowart, Gabreial, Morris, Mitchell, Coleman, Culyer, and Sterns.

SO REPORTED and RECOMMENDED this 2nd day of October, 2023, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA