UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| Brandon Greene, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:23CV114 |
| | ) | |
| Richmond County Jail, et al, | ) | |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
THURSDAY, APRIL 23, 2026; 10:01 a.m.

FOR THE PLAINTIFF:

Alison Ganem, Esquire
Ben Gunning, Esquire
Southern Center for Human Rights
60 Walton Street NW
Atlanta, Georgia 30303
(404)688-1202

Joe P. Reynolds, Esquire
Kilpatrick Townsend & Stockton, LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
(404)815-6500

FOR THE DEFENDANT:

Tameka Haynes, Esquire
Frails & Wilson, LLC
211 Pleasant Home Road, Suite A-1
Augusta, Georgia 30907
(706)855-6715

TRANSCRIBED FROM DIGITAL RECORDING BY:

Lisa H. Davenport, RPR, FCRR
Post Office Box 5485
Aiken, South Carolina 29804
(706)823-6468

(Call to Order at 10:01 a.m.)

THE CLERK: The court calls case 1:23CV114, Brandon Greene versus Richmond County Jail, et al. Here for plaintiff, Alison Ganem, Joe Reynolds, Sophie Tedesco, and Ben Gunning. Here for defendant, Tameka Haynes, for a status conference.

THE COURT: All right. Good morning, everybody. It is good to be back with y'all. I was just going to go through the things that I outlined in my minutes from the last discussion we had, plus anything else that y'all would like to talk about today, and the first item on that was the status of the county document productions.

Who wants to speak on behalf of the plaintiff with respect to that?

MS. GANEM: I am happy to, Your Honor.

THE COURT: All right. Ms. Ganem; is that right?

MS. GANEM: Yes, sir.

THE COURT: Okay.

MS. GANEM: Thank you, again, Your Honor. Thank you for having us back today. With respect to the document productions per the Court's instructions we served a subpoena on the Richmond County Sheriff's Office for the documents that we had previously requested through the Open Records Act. We served that subpoena on March 4 and shortly thereafter Ms. Haynes and Mr. Frails confirmed that they are, indeed, representing the Sheriff's Office with respect to the subpoena.

Then on March 20 we served the defendants with requests for production requesting a slightly different, but related, set of documents that we believe may be in the custody of the individual defendants as opposed to the custody of the Richmond County Sheriff's Office -- things like social media posts, text messages, and the like. With respect to the March 4 subpoena, the defendants have begun producing documents which we're certainly grateful for. We don't yet have everything that we requested, but we've conferred with, you know, defense counsel and we understand that the Sheriff's Office is continuing to produce records to them and that as they do that counsel will produce those to us.

We've also flagged for defense counsel that some of the records that we have received -- mainly the defendant's personnel files -- are fairly significantly redacted and we have some questions about some of the redactions. I think we've also flagged that we intend to send them a letter outlining what the redactions are that, you know, we're most concerned about. With respect to the March 20 request for production we haven't received anything -- no documents and no objections.

So I think ---

THE COURT: Which one you haven't -- the March 20 you haven't received anything?

MS. GANEM: Correct.

THE COURT: All right.

MS. GANEM: So I think in summary, Your Honor, I think at least from the plaintiff's perspective we're still hoping to work with the defendants on both sets of productions -- the subpoena and the RFPs -- although, you know, we think it could be helpful to have maybe another status conference or something in 30 days --

THE COURT: Okay.

MS. GANEM: -- perhaps with the expectation that the productions be complete by then, and, certainly, open to the Court's guidance on this, but, you know, if we reach an impasse beforehand, you know, we could certainly use the Court's standard procedures for resolving discovery disputes unless there is some other process the Court would prefer that we use.

THE COURT: That's perfectly fine. Anytime y'all need help with a discovery problem, just reach out to Mrs. Capps and we'll get on the phone as quickly as we can, usually within a day or two, to see if we can't work through it.

MS. GANEM: That's great.

THE COURT: What about the -- and this is helpful information -- the redactions that we're talking about? Are these of his records or other documents?

MS. GANEM: Other documents, Your Honor.

THE COURT: Okay.

MS. GANEM: So the main sets of records in which we

saw significant redactions were the personnel files of the defendants and, certainly, we understand that there is some information --

THE COURT: Sure.

MS. GANEM: -- that, of course, will be redacted --

THE COURT: Right.

MS. GANEM: -- social security numbers and the like, you know, personal identifying information like that. We're a little more concerned with redactions of people's criminal histories --

THE COURT: Sure.

MS. GANEM: -- disciplinary stories at the institution, things like that.

THE COURT: Okay.

MS. GANEM: And our understanding is that the Sheriff's Office is applying those redactions, not defense counsel, but, still, we'd like for there to be a process that we can --

THE COURT: Sure.

MS. GANEM: -- discuss and resolve those issues.

THE COURT: Okay. Do we have a protective order in place yet?

MS. GANEM: There is none.

THE COURT: Okay. Well, I say "protective order" -- I stopped entering those. When people ask me to enter a

protective order these days I just say, look, there is really no case or controversy here to decide. If y'all agree to these things it is binding on you just as much as if I entered an order and so a stipulation is where I have been steering the parties instead. So and, you know, if you want a copy of like an order that I've drafted in that regard, we can certainly provide that to y'all or if you file a motion for protective order joint I'll probably just enter that standard order I'm doing in all of my cases.

MS. GANEM: Gotcha.

THE COURT: So if that's helpful at all in terms of maybe y'all entering into a stipulation that would provide some protection at least for now until you get closer to trial.

MS. GANEM: Yeah, that's helpful, Your Honor. Thank you.

THE COURT: Okay. All right. So anything else in terms of the -- there's really nothing for me to help y'all with right now with the productions.

MS. GANEM: Not at this point, Your Honor.

THE COURT: And, Ms. Haynes, do you have any thoughts on this topic? It sounds like the Sheriff's Department is still sending you things and, certainly, you can only do so much to encourage them to do that. Do you think the next 30 days we'll be able to complete this?

MS. HAYNES: I think so. I mean, we've been providing

it on a rolling basis to them.

THE COURT: Okay. Right. But the Sheriff's Department you think will commit to getting the rest of the production --

MS. HAYNES: Yes.

THE COURT: -- completed by 30 days from now?

MS. HAYNES: I don't think that will be an issue.

THE COURT: Okay. All right. Anything else then with respect to document productions?

MS. GANEM: Just with respect to the request for production we think 30 days is probably sufficient time given that, you know, we served those on March 20, but I just want to make sure that works for defense counsel.

THE COURT: Ms. Haynes, does that work for you as well?

MS. HAYNES: I mean, it's a lot -- these are to the individual defendants. There's a lot of them. It takes time --

THE COURT: Right.

MS. HAYNES: -- you know. I guess procedurally we want to just make sure that they're authorized since discovery is closed and this is not like to a third party, but it just takes time with so many defendants to get responses from them --

THE COURT: Sure.

MS. HAYNES: -- because these are to them individually.

THE COURT: Okay. In terms of authorized, certainly, y'all could make an objection to the substance of any of the requests that have been made. The timing of it -- you know, at the hearing we had last time I did want to give some latitude to both sides because the case has obviously changed a lot; right? Now that we have counsel on the plaintiff's side I didn't want them to feel like they were hamstrung at trial because they weren't able to get some discovery -- some basic discovery that any lawyer would have requested; right? So I wanted them to have the ability to do that.

So the fact that they've done this I think is consistent with the sentiment that I expressed at our first status conference, but, certainly, that's not to say that you might have objections that you might typically raise with respect to these requests in terms of scope and proportionality and all those things, and if you have any of those concerns, I would just want you to raise them as soon as possible so that if y'all can't work something out we can get on a phone conference and it won't result in too much of a delay because we are trying as best we can to posture this case for trial.

Does that make sense, Ms. Haynes?

MS. HAYNES: It does.

THE COURT: Okay. And I understand her thought that

30 days may not be enough just because of how many clients she's having to request this information from and then reviewing that before she gets it out, but she understands that's the goal, and at the same time, Ms. Haynes, I understand the practicalities of what we're talking about. So I encourage you to try to get that request for production complete by the time we get together again in 30 days, but if you tried your hardest and your best and it just didn't happen, I am going to understand and we're going to have a little bit of time after that -- some cushion in terms of trial because trial is not going to occur until October 19. That is the date that Judge Hall has chosen for the trial. I appreciate y'all giving us those proposed dates.

MS. GANEM: Thank you, Your Honor.

THE COURT: All right. The next item that I listed for discussion today was any additional discovery that either side thinks we need to complete in advance of trial so that we have the best trial possible.

What about from the plaintiff's perspective?

MS. GANEM: Thank you, Your Honor. I think it's a little bit difficult to say exactly what else we might need without having seen, you know, the full set of records from the county, but at this juncture there are at least two additional potential discovery items that we wanted to raise with the Court.

THE COURT: Okay.

MS. GANEM: First we wanted to inquire about the possibility of making expert disclosures. We don't know yet whether we intend to disclose an expert in the case, but, you know, we're wondering if the Court would potentially be amenable to setting a deadline for that -- maybe 90 days before trial under Rule 26. I just sort of wanted to broach that possibility initially.

And then the second thing relatedly is we were hoping for an opportunity to inspect the jail, you know, to just go in and take some pictures, examine the living and safety conditions of the detention center that are relevant to Mr. Greene's claims. We may want to do that with an expert if we disclose one and so I think, you know, we would be asking to serve, you know, a request for inspection either on a Rule 34 or under Rule 45, you know, a subpoena to the non-party Sheriff's Office. So those are the two items that are on our potential lists.

THE COURT: Yeah, you know, the problem with pro se prisoner litigation is they just can't engage experts at all. I mean, feasibly, I guess they could theoretically do it; right? But it is practically impossible for them to do that.

MS. GANEM: Right.

THE COURT: And so I certainly think we've got enough time between now and the trial date to have both sides disclose

experts and have those experts deposed. And a jail inspection? Absolutely. I mean, how can you effectively represent your client without a chance to go in there and inspect it? Those are my initial thoughts.

Ms. Haynes, what are your thoughts?

MS. HAYNES: I have no objections. We discussed -- I told them that I would talk to the Sheriff's Office about the inspection.

THE COURT: Okay. Okay. In terms of the inspection and disclosures by both sides as well as depositions, I would want y'all to work together to come up with a proposed schedule for those things with the understanding that, you know, I am usually extremely liberal in allowing extensions to deadlines, but these are going to have to be tight and adhered to because we got a definite trial date and the sooner you can get in a place to disclose your experts, that's going to, you know, obviously, get the ball rolling for the rest of it.

How long do you think you'll need for that?

MS. GANEM: I think 90 days in advance of trial would be fine, but, also, you know, open and amenable to whatever the Court prefers.

THE COURT: Okay. So help me with this. Would that be July?

MS. GANEM: July.

THE COURT: I'm afraid that's going to probably put us

behind the eight ball a little --

MS. GANEM: Behind the eight ball?

THE COURT: -- because they're going to want to disclose experts and y'all are going to want to depose them and, typically, these experts are kind of difficult to schedule.

MS. GANEM: Yeah, that's a good point.

THE COURT: So could we move that up some?

MS. GANEM: Sure.

THE COURT: What are you waiting on to make a decision about experts?

MS. GANEM: I think probably the main things that we'd want to see are copies of additional grievances, perhaps some email communications. We understand that there's no -- there is no video in this case so I think we're unlikely to get anything like that, but, yeah, probably grievances and communications between and among the defendants.

THE COURT: Okay. All right. So perhaps maybe give Ms. Haynes a list of the things that you think are top priority that you would need to decide whether you want to engage expert witnesses and maybe she can make those her priority to try to get those back to you. Of course, communication among the defense -- that's a big one right there. That's going to take a while for her to be able to complete. So, hopefully, you could make some progress without getting all of those

communications. I mean, realistically, if we are trying this in October, if you made your expert disclosures by June 1 and they made theirs by July 1, then we're looking at probably July and August for depositions and that's probably -- you probably don't want it to go much longer than that.

MS. GANEM: That makes sense. That timeline sounds good to us.

THE COURT: Because then you're going to be in trial prep.

MS. GANEM: Right.

THE COURT: So, yeah, as much as you can get those expert disclosures together and out as quickly as possible, it is really going to help. So y'all talk about those deadlines and maybe email Mrs. Capps the deadlines that you want that y'all have agreed on. If you can't agree to them, we'll get back together and decide what they should be.

MS. GANEM: That sounds great.

THE COURT: Okay. And then the jail inspection -- I'll leave y'all to decide that, but it sounds like you would want that to occur before your disclosures are due.

MS. GANEM: Yeah.

THE COURT: Yeah. Okay. All right. Anything else in terms of additional discovery that the plaintiff thinks is necessary?

MS. GANEM: No, Your Honor.

THE COURT: What about from your perspective, Ms. Haynes? I want to offer the defense the same opportunity.

MS. HAYNES: There is nothing in particular I can think of at the moment.

THE COURT: Okay. Well, obviously, you're going to have an opportunity to disclose experts after the plaintiff discloses theirs -- plaintiffs, that is. All right. So moving on, what about interest in mediation? Have y'all talked about that among your team and, if so, what are your thoughts?

MS. GANEM: I think we remain interested --

THE COURT: Okay.

MS. GANEM: -- in the possibility of mediation in advance of trial. We've given some thought to possible mediators. We haven't conferred with the defendants about this yet, but, you know, we're certainly open to doing so and also open to the Court's preference with respect to timing.

THE COURT: Okay. Ms. Haynes, what are your thoughts? You probably would like to know some area -- ballpark of what they might be thinking in terms of what it would take to settle the case?

MS. HAYNES: Sure, yes. A demand is always helpful.

THE COURT: Yeah. Okay. Are y'all willing to put that in writing and send her a list of what the demands would be?

MS. GANEM: Yes, Your Honor.

THE COURT: Okay. And we'll just -- I'll leave that for y'all to have a continuing discussion about. Hopefully, your letter to her will kick that off in a productive way, but I am not going to put any pressure on anybody. If y'all feel like mediation is something that either side is not interested in, then fine. It if both sides say they're interested in mediation and y'all want a chance to get that done, then we could always stay the case and move the trial date back for that purpose.

MS. GANEM: That is helpful, Your Honor. That's helpful to know.

THE COURT: Okay. Because I don't want the time pressure to get in the way of a potential resolution. All right. The next issue and it was just a suggestion by me that y'all might want to consider narrowing claims in defendants since he drafted these himself and sometimes you get in there and you think, well, if I drafted a complaint I would not have sued this person or I would not have brought this claim and y'all are probably deep enough in the case to now know what you want to focus on. Are there -- is there an opportunity here at all you think to narrow the scope of anything?

MS. GANEM: We're -- we're certainly open to considering that, Your Honor. I feel a little bit like a broken record saying this, but we don't know that we're necessarily in a position to do that --

THE COURT: Sure.
MS. GANEM: -- just yet without the --
THE COURT: Right.
MS. GANEM: -- complete -- without any responses to our RFPs --
THE COURT: Okay.
MS. GANEM: -- and without the complete set of records from the county.
THE COURT: Okay.
MS. GANEM: Once we have those we think we will be able to make a more informed calculus about that.
THE COURT: Okay.
MS. GANEM: But, you know, just, for example, we just a couple of days ago received 12 personnel files --
THE COURT: Sure.
MS. GANEM: -- from some of the additional defendants --
THE COURT: I understand. Right.
MS. GANEM: -- so we don't really feel like we're in a position to say yes or no --
THE COURT: Okay.
MS. GANEM: -- until we kind of resolve those questions.
THE COURT: Like I said, the answer may be, no, we think he did an excellent job in identifying the claims and we

don't want to sacrifice any of that, and, if so, that's fine. I just want to make sure that that is something y'all are considering, and, along those lines, as we move closer to a trial date it seems to me here we might be able to cobble together a healthy stipulation of facts -- just basic facts concerning when he was arrested, why he was arrested to the extent you want that to be admissible. I don't know. You may have arguments as to why some of that may not come in, but, you know, just basic facts about his pretrial detention, movement from one unit to another, all of those kinds of things.

MS. GANEM: Absolutely. I think that would be really helpful.

THE COURT: Okay. Anything further from the plaintiff's perspective we should address today in this matter?

Mr. Reynolds, you're free to speak up, too.

MR. REYNOLDS: I'm sorry, Your Honor.

THE COURT: I asked who was going to take the lead, but that's not to the exclusion of anybody else.

MR. REYNOLDS: No. Absolutely. So it may be in connection with -- is it okay if I stand here?

THE COURT: Absolutely.

MR. REYNOLDS: In connection with the stipulated facts, it's a great idea. Typically, we deal with that in like a pretrial order kind of step.

THE COURT: Right.

MR. REYNOLDS: So one of the things we wanted to raise was the Court's preference was on timing of the pretrial order kind of recognizing here maybe we need a little bit more time to put the pretrial order together but then submit it and then work with you and Judge Hall in terms of are there any issues. So kind of having that date in mind when that might be due is something that we could then set and work towards.

THE COURT: What I may do in that regard -- I just can't tell you off the top of my head, but I may be able to find some good examples from prior Judge Hall cases as to his preference in that regard to give y'all some kind of indication. So what you're looking for is the date that the pretrial order would be due?

MR. REYNOLDS: That's right. That's right.

THE COURT: And what you're looking for is something that's a little sooner than normal, I guess you would say?

MR. REYNOLDS: I think that's right.

THE COURT: Instead of two weeks before trial you'd rather have it six weeks or something like that?

MR. REYNOLDS: That's right, Your Honor, and that way if there are disputed issues, then it gives the parties and the court plenty of time to work through those --

THE COURT: Okay.

MR. REYNOLDS: -- keeping that October trial date.

THE COURT: Okay. Well, what I may do is just

communicate that to Judge Hall that y'all had requested an earlier pretrial order deadline maybe a month to six weeks in advance of trial just for his consideration and we'll just say that we've checked that box off --

MR. REYNOLDS: That sounds great.

THE COURT: -- when I tell him what your thoughts are on that. Does that sound good?

MR. REYNOLDS: Thank you very much.

THE COURT: Okay. All right. Any thoughts on that topic from the defense?

MS. HAYNES: I have no objection to what was said.

THE COURT: Okay. Well, anything else on any topic related to this case that we need to talk about from the plaintiff's perspective today?

MS. GANEM: No, Your Honor. Thank you.

THE COURT: All right. Anything further from the defense, Ms. Haynes?

MS. HAYNES: I don't have anything.

THE COURT: It is great to see all y'all. I really appreciate your hard work on this case. I am available to y'all anytime if you have any issue that you're trying to work through and you're having difficulty. I am just here to help y'all get through the pretrial phase of the case. So if you email Mrs. Capps and let her know, we'll get together same day, next day, couple of days for sure. We'll get together and talk

about whatever it is I can help y'all with. All right. Thank you so much. Court is adjourned.

(The hearing is concluded.)

CERTIFICATE OF OFFICIAL REPORTER

I, Lisa H. Davenport, Federal Official Court Reporter, in and for the United States District Court for the Southern District of Georgia, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of record of the digitally-recorded proceedings to the best of my ability and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Digitally signed by Lisa Davenport
Date: 2026.05.31 19:52:45 -04'00'

Lisa H. Davenport, RPR, FCRR
Federal Official Court Reporter